UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MELANY CLAUSEN,　　　　　　　　　　　　　　Docket No.:

　　　　　　　*Plaintiff,*

　　　　　　　　　　　　　　　　　　　　　　　　　**COMPLAINT**

　-against-

　　　　　　　　　　　　　　　　　　　　　　　　　**PLAINTIFF DEMANDS**
CUSHMAN & WAKEFIELD U.S., INC.　　　　　　**A TRIAL BY JURY**
and C&W FACILITY SERVICES INC.,

　　　　　　　*Defendant.*
------------------------------------------------------------------X

　　　　Plaintiff, Melany Clausen, as and for her Complaint, respectfully alleges, all upon information and belief, as follows:

## JURISDICTION AND VENUE

　　　　1.　　This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1332, in that Plaintiff's claims exceed the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

　　　　2.　　Venue is proper under 28 U.S.C §1391(b) because the events underlying this action occurred within the Southern District of New York.

## IDENTITY OF THE PARTIES

　　　　3.　　At all relevant times mentioned herein, Plaintiff Melany Clausen ("Clausen") is a citizen of New Jersey and was employed by Defendant Cushman & Wakefield U.S., Inc. and/or Defendant C&W Facility Services Inc. in their offices located in the County, City and State of New York until July 7, 2021, when she was terminated to punish her for her complaints about gender discrimination.

　　　　4.　　Defendant Cushman & Wakefield U.S., Inc. is a Missouri corporation with a principal place of business in Illinois.

5. Defendant C&W Facility Services Inc. is a Massachusetts corporation with a principal place of business in Massachusetts.

4. Both Defendants either form or are part of a single integrated entity that employed Clausen and both Defendants are collectively referred to herein as "Cushman & Wakefield."

5. Cushman & Wakefield is a global commercial real estate services firm and is among the world's largest commercial real estate services firms.

6. There is complete diversity between the parties in this action brought solely under the New York City Human Rights Law.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

7. Clausen commenced her employment with Cushman & Wakefield in or around 2015 as a Front Desk Agent.

8. Clausen was hired to work at Cushman & Wakefield's Helmsley Medical Tower Guest Facility located at 1320 York Avenue, New York, NY, which was essentially a hotel for patients, guests and employees of New York Presbyterian.

9. At all relevant times, Clausen was qualified for her position, as confirmed by the positive feedback she received throughout her employment and the fact that Clausen was promoted to Front Office Manager at the 1320 York Avenue location in or around 2016.

10. Clausen took a substantial leadership role at her location and became the sole individual there with the knowledge and expertise to effectively run the hotel, as confirmed by, among other things, the fact that she merged positions at the desk, transformed the culture at the hotel, created a training and mentoring system to help the front desk obtain Fire Line Safety Director ("FLSD") Certification and helped lead the location through the COVID-19 pandemic.

11. In or around the end of February 2021, the Assistant General Manager position at the hotel, which was the position that Clausen had reported into, became vacant.

12. Clausen was advised that the Assistant General Manager position was being converted into a "Hotel Operations Manager" position.

13. Clausen was qualified for the Hotel Operations Manager position and, in fact, had already been performing many of the duties included within that role.

14. In March 2021, Clausen submitted an application for the Hotel Operations Manager position, both internally through Cushman & Wakefield's website and through an external internet platform.

15. Despite her application and interest, Clausen was not spoken to or interviewed for the position.

16. Instead, the position went to a man with far less qualifications and experience than Clausen.

17. On or about Friday, April 23, 2021, Clausen met with General Manager Scott Severs ("Severs") and pointedly asked him why she was not considered for the Hotel Operations Manager role, since she was already performing many of that role's responsibilities.

18. Severs vaguely responded, "We are going in a different direction."

19. Clausen knew that there was no "different direction" that Cushman & Wakefield was pursuing, nor would any such "different direction" have prohibited Clausen from being interviewed for the new role.

20. It was clear to Clausen that the real reason she was passed over for the position for which she was uniquely qualified was her gender.

21. In addition to being passed over for a male outside the company, a male employee who had worked for Cushman & Wakefield for a little over a year, with zero hotel knowledge or experience, was given a promotion.

22. When announcing this male employee's promotion, Severs cited accomplishments that Clausen had achieved as some of the reasons for his promotion, further confirming that Clausen's contribution was overlooked.

23. Clausen observed that no matter how hard she worked, only men were considered for advancement at Cushman & Wakefield, and her successes were explained away as a byproduct of a male colleague's leadership.

24. Cushman & Wakefield also permitted a "boys club" environment that was so apparent that a new employee hired in 2021 told Clausen that the culture at the hotel was like a "frat house."

25. The gender discrimination Clausen faced was so blatant that two female employees approached her separately and voiced their concern about the discrimination to which Clausen was being subjected.

26. Making the situation even more humiliating, Clausen was still expected to do much of the work of the Hotel Operations Manager position, since the man who was hired for that role was not qualified.

27. Clausen was not offered any additional compensation for those extra responsibilities, though she had seen men receive additional compensation for doing extra work.

28. On Tuesday, April 27, 2021, Clausen complained about gender discrimination in an email she sent to Brenda Rodriguez ("Rodriguez"), Senior Manager of Human Resources for

Cushman & Wakefield, which was a protected activity under the New York City Human Rights Law.

29. The next day, Wednesday, April 28, 2021, Rodriguez acknowledged receipt of Clausen's email and scheduled a time the following Monday to speak with Clausen by phone.

30. On Friday, April 30, 2021, two days after Clausen sent her email, Severs sent Clausen a memo regarding the meeting that she had with him a week earlier on April 23, 2021, when Clausen had asked why she had not been considered for the Hotel Operations Manager position.

31. Severs' memo distorted what had occurred at the meeting and was a clear attempt to create a pretext in response to Clausen's written complaint submitted two days earlier.

32. For example, Severs claimed that during their April 23 meeting, he had asked Clausen for examples of why she had been overlooked and she was unable to provide any, when the truth was that Severs had not asked Clausen for any examples and had vaguely responded, repeatedly, that he was "going in a different direction."

33. Severs concluded his memo by stating that there were "necessary skills missing" from Clausen, which was a baseless attack on Clausen's performance intended to create a pretext, since Clausen had received glowing feedback about her work.

34. Clausen responded to the distortions in Severs' memo in an email she sent him on Monday, May 3, 2021.

35. Among other things, Clausen responded to Severs' claim in his memo that Clausen's prior promotion was proof that she had not been overlooked, noting that her prior promotion was years earlier under different management and that she had been overlooked for

promotions since Severs took over, as confirmed by the fact that he did not even interview her for the Hotel Operations Manager role.

36. Clausen also asked Severs to identify the "necessary skills missing" that he cited in his memo, but neither Severs nor anyone from Cushman & Wakefield had or would ever explain what these alleged performance deficiencies were.

37. Severs responded to Clausen with a short email on Thursday, May 6, 2021, stating he would schedule a meeting with Rodriguez and Human Resources to discuss further, though he never set up any such meeting.

38. Clausen thereafter had her attorney send a letter to Cushman & Wakefield on May 17, 2021, and her counsel was in contact with counsel for Cushman & Wakefield, which was further protected activity under the New York City Human Rights Law.

39. More than one month after Clausen sent her email on April 28, Rodriguez finally responded to Clausen's email via letter dated Friday, June 4, 2021.

40. Rodriguez's letter confirmed Cushman & Wakefield's blatant effort to explain away Clausen's complaints without genuinely addressing them, making it clear that nothing would change in Clausen's workplace.

41. For example, Rodriguez claimed that the man who assumed the Hotel Operations Manager role "has significantly more experience in hotel operations and financial management" than Clausen, which was not possible because Clausen is approximately 10 older than that man and worked at the location for six years with excellent feedback.

42. Furthermore, Rodriguez's letter sought to perpetuate Cushman & Wakefield's false pretext that "concerns have been expressed" about Clausen's ability "to fulfill the increased

6

responsibilities" of the Hotel Operations Manager role, even though Clausen continued to perform many of those responsibilities.

43. Rodriguez failed to offer an explanation for why Clausen was not interviewed for the Hotel Operations Role, and none would ever be offered.

44. Clausen responded to Rodriguez's letter on Tuesday, June 8, 2021, pointing out the undeniable falsity of many of the claims in Rodriguez's letter, which was another protected activity under the New York City Human Rights Law.

45. Clausen did not hear from Rodriguez until June 17, 2021, when Rodriguez wrote to Clausen and acknowledged receipt of her email.

46. Rodriguez finally responded on Friday, June 25, 2021, stating that Cushman & Wakefield "considered this matter closed…"

47. Clausen was terminated less than two weeks later on Thursday, July 8, 2021.

48. Cushman & Wakefield claimed that Clausen was being terminated as part of a reduction-in-force, but this was a clear pretext, as Clausen continued to perform a leadership role at her location and her responsibilities could not be reduced or eliminated.

49. In fact, Cushman & Wakefield's website posted a job description for Clausen's exact duties *the very same day Clausen was fired*, confirming that Cushman & Wakefield's claim of a reduction-in-force was blatantly false.

50. The real reason that Clausen was terminated was to punish her for her complaints of gender discrimination and her refusal to accept Cushman & Wakefield's baseless excuses for that discrimination.

51. As a result of Cushman & Wakefield's discriminatory conduct, Clausen has suffered the adverse effects of gender discrimination and retaliation, which includes damages to the quality of her life, her self-esteem, self-respect and financial and emotional well-being because she was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Clausen into the future.

52. Here, Cushman & Wakefield's conduct towards Clausen shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Clausen's rights under the New York City Human Rights Law, or that their unlawful actions against Clausen were so reckless as to amount to a disregard of Clausen's rights, so that in addition to all the damages inflicted upon Clausen and in addition to all the measure of relief to which Clausen may properly be entitled herein, Cushman & Wakefield should also be required to pay punitive damages as punishment for its discriminatory conduct in order to deter it and others similarly situated from engaging in such conduct in the future.

**AS FOR A FIRST CAUSE OF ACTION ON BEHALF
OF CLAUSEN AGAINST CUSHMAN & WAKEFIELD
FOR GENDER DISCRIMINATION IN VIOLATION
OF THE NEW YORK CITY HUMAN RIGHTS LAW**

53. Clausen repeats, realleges and incorporates in full paragraphs 1 through 52 of this Complaint, as though fully set forth at length herein.

54. At the time Clausen was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her gender.

55. Throughout the time of her employment with Cushman & Wakefield, Clausen was fully qualified for her position and was in a position to continue working in that capacity

56. Cushman & Wakefield treated Clausen less well because of her gender and took adverse employment action against her by denying her advancement opportunities and subjecting her to a hostile and demeaning work environment because of her gender and ultimately terminating her.

57. The aforementioned acts of Cushman & Wakefield constitute unlawful discrimination against Clausen in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) (referred to herein as "The New York City Human Rights Law"), which provides, *inter alia* that:

> It shall be an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

58. As a result of Cushman & Wakefield's violations of the New York City Human Rights Law §8-107(1)(a), Cushman & Wakefield is liable to Clausen pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

59. Clausen has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Cushman & Wakefield's outrageous conduct in violation of Clausen's human rights, all of which has impacted her well-being and the quality of her life.

60. As a direct and proximate result of Cushman & Wakefield's discriminatory conduct complained of herein, Clausen has suffered damages, injuries and losses, both actual and prospective, which include damage to her career and the emotional pain and suffering she has been

caused to suffer and continues to suffer, all of which Clausen alleges to be in the amount of Two Million Dollars ($2,000,000).

61. Here, Cushman & Wakefield's conduct towards Clausen shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Clausen's rights under the New York City Human Rights Law, or that its unlawful actions against Clausen were so reckless as to amount to a disregard of Clausen's rights, so that in addition to all the damages inflicted upon Clausen and in addition to all the measures of relief to which Clausen may properly be entitled herein, Cushman & Wakefield should additionally be required to pay punitive damages as punishment for its discriminatory conduct in the further amount of Three Million Dollars ($3,000,000), in order to deter it and others similarly situated from engaging in such conduct in the future.

62. Clausen, therefore, seeks judgment against Cushman & Wakefield on this First Cause of Action, including, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees, making a total claim of Five Million Dollars ($5,000,000).

**AS FOR A SECOND CAUSE OF ACTION ON BEHALF
OF CLAUSEN AGAINST CUSHMAN & WAKEFIELD
FOR RETALIATION IN VIOLATION OF §8-107(7)
OF THE NEW YORK CITY HUMAN RIGHTS LAW**

63. Clausen repeats, re-alleges and incorporates in full paragraphs 1 through 62 of this Complaint, as though fully set forth at length herein.

64. Each time that Clausen protested gender discrimination in her workplace, she was engaged in a protected activity under the New York City Human Rights Law of which Cushman & Wakefield was aware.

65. As a proximate result of Clausen engaging in protected activities under the New York City Human Rights Law, Clausen suffered adverse employment action that culminated in her unlawful termination on July 8, 2021.

66. The remarkably close temporal proximity between Clausen's complaints of discrimination starting on April 27, 2021, and her termination on July 8, 2021, in addition to the falsity of the reason offered, demonstrates that her termination was motivated, at least in part, by unlawful retaliation.

67. The aforementioned acts of Cushman & Wakefield constitute unlawful retaliation against Clausen in violation of §8-107(7) of the New York City Human Rights Law, which provides, inter alia, that:

> It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter . . .

68. As a result of Cushman & Wakefield's violations of the New York City Human Rights Law §8-107(7), Cushman & Wakefield is liable to Clausen pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

69. Clausen has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of

Cushman & Wakefield's outrageous conduct in violation of Clausen's human rights, all of which has impacted her well-being and the quality of her life

70. As a direct and proximate result of Cushman & Wakefield's retaliatory conduct complained of herein, Clausen has suffered damages, injuries and losses, both actual and prospective, which include the loss of her job and the emotional pain and suffering she has been caused to suffer and continues to suffer, all of which Clausen alleges to be in the amount of Two Million Dollars ($2,000,000).

71. Here, Cushman & Wakefield's conduct towards Clausen shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Clausen's rights under the New York City Human Rights Law, or that their unlawful actions against Clausen were so reckless as to amount to a disregard of Clausen's rights, so that in addition to all the damages inflicted upon Clausen and in addition to all the measures of relief to which Clausen may properly be entitled herein, Cushman & Wakefield should additionally be required to pay punitive damages as punishment for its discriminatory conduct in the further amount of Three Million Dollars ($3,000,000), in order to deter it and others similarly situated from engaging in such conduct in the future.

72. Clausen, therefore, seeks judgment against Cushman & Wakefield on this Second Cause of Action, including, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees, making a total claim of Five Million Dollars ($5,000,000).

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff Melany Clausen demands judgment against Defendants Cushman & Wakefield U.S., Inc. and C&W Facility Services Inc. on the First Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); on the Second Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); plus, for both Causes of Action, pre-judgment interest, the costs of this action and reasonable attorney's fees; and for such relief as this Court deems just and proper.

        **SCHWARTZ PERRY & HELLER, LLP**
        *Attorneys for Plaintiff*

By:_____
        BRIAN HELLER
        DAVIDA S. PERRY
        3 Park Avenue, Suite 2700
        New York, NY 10016
        (212) 889-6565